1

2

3

4

5

6

7

8 # UNITED STATES DISTRICT COURT

9 EASTERN DISTRICT OF CALIFORNIA

10

11 J & J SPORTS PRODUCTIONS, INC.,　　)　1:10-cv-01705 AWI GSA
　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　) **FINDINGS AND RECOMMENDATIONS**
12　　　　　　　　　　　　　　　　　　　) **REGARDING PLAINTIFF'S**
　　　　v.　　　　　　　　　　　　　　　　) **APPLICATION FOR DEFAULT**
13　　　　　　　　　　　　　　　　　　　) **JUDGMENT**
　　VICHIT SETH TILAKAMONKUL, et al.,　)
14　　　　　　　　　　　　　　　　　　　) (Document 19)
　　　　　Defendants.　　　　　　　　　　)
15　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
16 _____)

17

18　　　　On May 5, 2011, Plaintiff J & J Sports Productions, Inc. ("Plaintiff") filed the present

19 Application for Default Judgment by the Court against Defendant Vichit Seth Tilakamonkul,

20 individually and doing business as T's Asian Bistro.  (Doc. 19.)  A hearing was held on June 10,

21 2011, before the Honorable Gary S. Austin.  Thomas P. Riley, Jr. appeared telephonically on

22 behalf of Plaintiff.  No appearance was made by or on behalf of Defendant.

23　　　　　　　　　　　　　　　　　　**BACKGROUND**

24　　　　Plaintiff filed the instant action on September 17, 2010.  (Doc. 1.)  Defendant was served

25 with the summons and complaint on March 5, 2011.  (Doc. 12.)  The complaint alleges violations

26 of Title 47 of the United States Code sections 605 and 553.  Plaintiff also alleges a state law

27

28　　　　　　　　　　　　　　　　　　　　1

1   claim of conversion and a violation of California Business and Professions Code section 17200,

2   *et seq.*

3        Defendant has not answered the complaint or otherwise appeared in this action.  (Doc.

4   15.)  On April 8, 2011, the Clerk of the Court entered default against Defendant Vichit Seth

5   Tilakamonkul.  (Doc. 16.)

6        Plaintiff filed the instant application for default judgment on May 5, 2011.  Plaintiff

7   requests that the Court enter default judgment against Defendant in the amount of $112,200.00.

8   Despite being served with the application by United States Mail, Defendant has not responded to

9   the application.

10                              **Legal Standard**

11       Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered:

12            By the Court.  In all other cases, the party must apply to the court for a
         default judgment.  A default judgment may be entered against a minor or
13       competent person only if represented by a general guardian, conservator, or other
         like fiduciary who has appeared.  If the party against whom a default judgment is
14       sought has appeared personally or by a representative, that party or its
         representative must be served with written notice of the application at least 3 days
15       before the hearing.  The court may conduct hearings or make referrals--preserving
         any federal statutory right to a jury trial--when, to enter or effectuate judgment, it
16       needs to:
                   (A) conduct an accounting;
17                 (B) determine the amount of damages;
                   (C) establish the truth of any allegation by evidence; or
18                 (D) investigate any other matter.

19  "Upon default, the well-pleaded allegations of the complaint relating to liability are taken as

20  true."  *Dundee Cement Co. v. Highway Pipe and Concrete Products*, 722 F.2d 1319, 1323 (7th

21  Cir.  1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

22       Factors which may be considered by courts in exercising discretion as to the entry of a

23  default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of

24  plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake

25  in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default

26  was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

27

28                                      2

1   Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir.

2   1986).

3                                              **DISCUSSION**

4           Service of summons and complaint upon Defendant was effected on March 5, 2011.  A

5   true and correct copy of the Proof of Service was filed with this Court on March 17, 2011.  (Doc.

6   12).  Defendant failed to respond to the complaint or otherwise appear in this action.  The Clerk

7   of the Court entered default against Defendant on April 8, 2011.  (Doc. 16.)  Defendant is not an

8   infant or incompetent person, and is not in the military service or otherwise exempted under the

9   Soldiers' and Sailors' Civil Relief Act of 1940.  (*See* Doc. 19 at ¶ 1 & 19-2 at ¶ 3.)

10          Plaintiff seeks judgment pursuant to Title 47 of the United States Code section 605

11  against Defendant for unlawfully intercepting, receiving and exhibiting the *"Number One": The*

12  *Floyd Mayweather, Jr. v. Juan Manuel Marquez Championship Fight Program* on September

13  19, 2009, at his establishment in Merced, California.  Plaintiff requests enhanced statutory

14  damages in the amount of $110,000.00 and $2,200.00 for state law conversion.

15          The relevant provisions of Title 47 of the United States Code section 605, which address

16  unauthorized publication or use of wire or radio communications, state:

17          (a) . . . no person receiving, assisting in receiving, transmitting, or assisting
        in transmitting, any interstate or foreign communication by wire or radio shall
18      divulge or publish the existence, contents, substance, purport, effect, or meaning
        thereof, except through authorized channels of transmission or reception, (1) to
19      any person other than the addressee, his agent, or attorney. . .. No person not being
        authorized by the sender shall intercept any radio communication and divulge or
20      publish the existence, contents, substance, purport, effect, or meaning of such
        intercepted communication to any person. No person not being entitled thereto
21      shall receive or assist in receiving any interstate or foreign communication by
        radio and use such communication (or any information therein contained) for his
22      own benefit or for the benefit of another not entitled thereto. No person having
        received any intercepted radio communication or having become acquainted with
23      the contents, substance, purport, effect, or meaning of such communication (or
        any part thereof) knowing that such communication was intercepted, shall divulge
24      or publish the existence, contents, substance, purport, effect, or meaning of such
        communication (or any part thereof) or use such communication (or any
25      information therein contained) for his own benefit or for the benefit of another not
        entitled thereto.

26

27

28                                                  3

1  Additionally, the aggrieved party is authorized to obtain statutory damages of "not less than

2  $1,000 or more than $10,000, as the court considers just" for each violation.  47 U.S.C. §

3  605(e)(3)(C)(i)(II).  The court may award enhanced damages up to $100,000 for each violation if

4  it finds the violation was willfully committed for commercial advantage or private financial gain.

5  47 U.S.C. § 605 (e)(3)(C)(ii).

6          Plaintiff attests that it is a closed-circuit distributor of sports and entertainment

7  programming that purchased and retained the commercial exhibition licensing rights to the

8  program at issue.  Plaintiff marketed the sub-licensing (commercial exhibition) rights in the

9  program to its commercial customers.  (Doc. 19-4 at ¶ 3.)  Plaintiff contends that persistent signal

10  piracy of its programming costs the company, its customers and the community millions of

11  dollars annually.  (Doc. 19-4 at ¶ 11.)  Plaintiff believes this results in part from the perceived

12  lack of significant consequences (including nominal or minimal damage awards by the Courts

13  who hear its cases) for such unlawful interception and exhibition by the commercial signal

14  pirates.  (Doc. 19-4 at ¶ 12.)  As such, Plaintiff requests the maximum allowance for statutory

15  violations, totaling $110,000.00.  (Doc. 19-4 at ¶ 13.)

16          Here, the summons and complaint were served upon Defendant Vichit Seth Tilakamonkul

17  by substitute service on March 5, 2011.  The service was effected pursuant to subdivision (h)(1)

18  of Rule 4 of the Federal Rules of Civil Procedure, which provides as follows:

19          Unless federal law provides otherwise or the defendant's waiver has been filed, a
            domestic or foreign corporation, or a partnership or other unincorporated
20          association that is subject to suit under a common name, must be served:
                    (1) in a judicial district of the United States:
21                      (A) in the manner prescribed by Rule 4(e)(1) for servicing an individual;
            or
22                      (B) be delivering a copy of the summons and of the complaint to an
            officer, a managing or general agent, or any other agent authorized by
23          appointment or by law to receive service of process and - if the agent is one
            authorized by statute and the statute so requires - by also mailing a copy of each to
24          the defendant; or
                    (2) at a place not within any judicial district of the United States, in any
25          manner prescribed by Rule 4(f) for serving an individual, except personal delivery
            under (f)(2)(C)(i).

26

27

28                                                  4

1   Rule 4(e) provides the following:

2   **Serving An Individual Within a Judicial District of the United States**.
    Unless federal law provides otherwise, an individual - other than a minor, an
3   incompetent person, or a person whose waiver has been filed - may be served in a
    judicial district of the United States by:
4       (1) following state law for serving a summons in an action brought in
    courts of general jurisdiction in the state where the district court is located or
5   where service is made; or
        (2) doing any of the following:
6           (A) delivering a copy of the summons and of the complaint to the
    individual personally;
7           (B) leaving a copy of each at the individual's dwelling or usual place of
    abode with someone of suitable age or discretion who resides there; or
8           (C) delivering a copy of each to an agent authorized by appointment or
    by law to receive service of process.
9

10      In particular here, the summons and complaint was served upon Somsac Tilakamonkul,

11  the co-occupant of Defendant's residence, located at 24931 Overland Drive, Laguna Hills,

12  California, on March 5, 2011, at 9:40 a.m. (*See* Doc. 12.)  Thus, it appears that Defendant's

13  default was properly entered for a failure to respond to the summons and complaint.  Further, it

14  appears the complaint is sufficiently well-pled.  By his default, Defendant has admitted to

15  willfully violating the referenced statutes for purposes of commercial advantage.

16      Having in mind that the deterrence of future violations is an important objective of the

17  statutes at issue here, the Court considers the following facts.

18      Defendant's establishment is a medium sized, dine in and take out, family restaurant, with

19  a maximum capacity of approximately sixty patrons.  Mitch Gerking, Plaintiff's investigator,

20  noted that T's Asian Bistro is "in very good condition" and is located "within the incorporated

21  city limits of Merced."  The restaurant's dining area contains a sixty-inch projection style

22  television set, sitting on an entertainment center in the southeast corner of the room.  From the

23  photographs attached to Mr. Gerking's report, it is clear the projection screen could be viewed by

24  the majority of the restaurant's patrons.  On Saturday evening, September 19, 2009, between 8:23

25  and 8:28 p.m., Gerking conducted three head counts.  Each of the three counts revealed that eight

26

27

28                                              5

1   persons were present.  (Doc. 19-3 at 2-3 & exhibits.)  Photographs of the establishment depict a

2   modern, well maintained building on 16th Street in Merced.  (Doc. 19-3, exhibits.)

3          In light of the foregoing, this Court will recommend that the maximum statutory damages

4   be awarded, to wit: $10,000.00.  Moreover, because Defendant's actions were willful, coupled

5   with the fact that the establishment is in very good condition, in an incorporated part of Merced,

6   yet the number of patrons present during the exhibition of the pirated Program was low, the

7   Court will also recommend that enhanced damages of $20,000.00 be awarded.

8          Additionally, Plaintiff seeks $2,200.00 in conversion damages, the value of the property

9   at the time of the conversion.  (Doc. 19-1 at 22.)  Under California law, "[c]onversion is the

10  wrongful exercise of dominion over the property of another.  The elements of a conversion are

11  (1) the plaintiff's ownership or right to possession of the property at the time of the conversion;

12  (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3)

13  damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581, 35 Cal.Rptr.3d 684

14  (2005) (internal quotation marks omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta*

15  *Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir.1992).  "Because conversion is a strict liability tort,

16  questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant."

17  *Gilman v. Dalby*, 176 Cal.App.4th 606, 615 n.1, 98 Cal.Rptr.3d 231 (2009).  Exclusive right to

18  distribute a broadcast signal to commercial establishments constitutes a "right to possession of

19  property" for purposes of conversion.  *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp.

20  419, 423 (N.D. Cal. 1995); *see also DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D.

21  Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right

22  to possession of personal property" for purposes of a conversion claim under California law).

23          Here, Plaintiff was granted the exclusive domestic commercial exhibition licensing rights

24  to the program at issue, and thus had the right to possession of the property at the time of the

25  conversion. (Doc. 19-4, ¶ 3.)  Next, because Defendant did not legally purchase the pay-per-

26  view programming, the exhibition of the fight in T's Asian Bistro on September 19, 2009,

27

28                                                    6

1   constituted Defendant's conversion by a wrongful act or disposition of property rights.  (Doc. 19-

2   4, ¶¶ 6-7.)  Finally, the rate card for the ""*Number One*": *The Floyd Mayweather, Jr. v. Juan*

3   *Manuel Marquez Championship Fight Program*, for an establishment with "a maximum fire

4   code occupancy" of sixty (60) persons, similar in size to Defendant's establishment, indicates the

5   sub-license fee for the program would have been $2,200.00.  (Doc. 19-4, ¶ 8 & Ex. 2.)  Thus,

6   Plaintiff is entitled to damages for conversion in the amount of $2,200.00.

7        In sum, the Court finds the possibility of prejudice to Plaintiff in the absence of default

8   judgment would be significant.  Further, Plaintiff's complaint is sufficient and serves to establish

9   the merits of its substantive claims.  While the money at stake in this action is significant, it

10  should not preclude Plaintiff's remedy, an in fact are delineated by statute.  Additionally, in light

11  of Defendant's failure to respond to proper service of the summons and complaint, there is little

12  possibility of a dispute concerning material facts, nor is there any indication that Defendant's

13  default was due to excusable neglect.  While there exists a strong policy underlying the Federal

14  Rules of Civil Procedure favoring decisions on the merits, this policy should not serve to

15  preclude Plaintiff from the remedy it seeks.  *Eitel v. McCool*, 782 F.2d at 1471-1472.

16                              **RECOMMENDATIONS**

17       Based on consideration of the declarations, pleadings and exhibits to the present

18  application, the Court RECOMMENDS as follows:

19       1.    Plaintiff's application for default judgment be GRANTED;

20       2.    Judgment be entered in this action against Defendant Vichit Seth Tilakamonkul;

21             and

22       3.    Damages in the total amount of $32,220.00 be awarded as follows:

23             a.    For the violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), the sum of $10,000.00;

24             b.    For the violation of  47 U.S.C. § 605 (e)(3)(C)(ii), the sum of $20,000.00;

25                   and

26             c.    For the conversion of Plaintiff's property, the sum of $2,200.00.

27

28                                        7

1    These findings and recommendations are submitted to the district judge assigned to this

2  action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local

3  Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written

4  objections to these findings and recommendations with the Court and serve a copy on all parties.

5  Such a document should be captioned "Objections to Magistrate Judge's Findings and

6  Recommendations."  The district judge will review the magistrate judge's findings and

7  recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The

8  parties are advised that failure to file objections within the specified time may waive the right to

9  appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

10

11    IT IS SO ORDERED.

12    **Dated:** __**June 10, 2011**__          ___/s/ **Gary S. Austin**___
                                                  UNITED STATES MAGISTRATE JUDGE